1

1          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF SOUTH CAROLINA
2                    COLUMBIA DIVISION

3

    UNITED STATES OF AMERICA, )
4                             )
              PLAINTIFF,      )
5                             )
            -VERSUS-          )    3:18-CR-00078
6                             )    MAY 14, 2019
    RONALD ALLEN WRIGHT,      )    COLUMBIA, SC
7                             )
            DEFENDANT.        )
8   _____)

9

10        BEFORE THE HONORABLE MARY GEIGER LEWIS
          UNITED STATES DISTRICT JUDGE, PRESIDING
11                  SENTENCING HEARING

12
    A P P E A R A N C E S :
13

14   FOR THE GOVERNMENT:     TOMMIE PEARSON, AUSA
                             UNITED STATES ATTORNEY'S OFFICE
15                           1441 MAIN STREET, SUITE 500
                             COLUMBIA, SC  29201
16
     FOR THE DEFENDANT:      MARK REAGAN CALHOUN, ESQ.
17                           CALHOUN LAW FIRM
                             714 EAST MAIN STREET
18                           LEXINGTON, SC  29072

19   COURT REPORTER:         KATHLEEN RICHARDSON, RMR, CRR
                             UNITED STATES COURT REPORTER
20                           901 RICHLAND STREET
                             COLUMBIA, SC 29201
21

22          STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

23                  *** *** *** ***

24

25

2

1        *THE COURT:*  ALL RIGHT.

2        *MR. PEARSON:*  THANK YOU, YOUR HONOR.  AT THIS TIME

3   THE GOVERNMENT CALLS THE UNITED STATES OF AMERICA VERSUS

4   RONALD ALLEN WRIGHT ON CRIMINAL NUMBER 3:18-078.  YOUR HONOR,

5   WE ARE HERE THIS MORNING FOR SENTENCING IN THIS MATTER.  I DO

6   BELIEVE THAT THE DEFENSE HAS TWO OUTSTANDING OBJECTIONS TO

7   THE PRESENTENCE REPORT AND I ALSO BELIEVE THAT THE DEFENDANT

8   HAS FILED AN ADDITIONAL MOTION TO TERMINATE HIS COUNSEL THAT

9   I DO BELIEVE THE COURT WILL LIKELY HAVE TO TAKE UP.  I'M NOT

10  SURE IN WHAT ORDER YOU'D LIKE TO DO THAT.

11       *THE COURT:*  RIGHT.  I THINK WE PROBABLY NEED TO

12  TAKE UP THE STATUS OF COUNSEL ISSUE FIRST, SO I'LL JUST ASK

13  YOU ALL TO STEP OUTSIDE.

14       (WHEREUPON, A SEALED HEARING WAS CONDUCTED THAT IS NOT A

15  PART OF THIS TRANSCRIPT.)

16       *THE COURT:*  ALL RIGHT.  MR. PEARSON, I HEARD FROM

17  MR. CALHOUN AND ALSO FROM MR. WRIGHT ON ALL OF THESE MOTIONS

18  AND WHAT HIS BASIS IS, AND HE HAS NO BASIS TO SUPPORT THE

19  GRANTING OF ANY OF THESE MOTIONS, SO WE'LL PROCEED WITH

20  SENTENCING.

21       *MR. PEARSON:*  OKAY.  YOUR HONOR, I DO BELIEVE --

22  DOES THAT INCLUDE I GUESS -- THE FIRST OBJECTION TO THE

23  PRESENTENCE REPORT APPEARED NOT TO NECESSARILY HAVE ANY

24  BEARING ON THE CALCULATION OF THE GUIDELINES.  BUT THE SECOND

25  OBJECTION UNDER A LIBERAL READING COULD BE AN OBJECTION TO

1    JURISDICTION, AND I WAS WONDERING IF THE COURT WOULD LIKE THE

2    GOVERNMENT TO RESPOND TO THAT ONE.

3           *THE COURT:* WELL, LET'S FIRST -- LET ME GO OVER

4    WHAT I HAVE LOOKED AT AND ASK MR. WRIGHT IF HE HAS HAD ENOUGH

5    TIME TO DO ALL THIS. ALL RIGHT. I HAVE LOOKED OVER A

6    REVISED PRESENTENCE INVESTIGATION REPORT, AND THAT'S REALLY

7    THE ONLY THING I HAVE LOOKED AT. OBVIOUSLY I TRIED THE CASE

8    WHERE MR. WRIGHT WAS CONVICTED, SO I'M FAMILIAR WITH IT.

9        IS THERE ANYTHING ELSE I NEED TO LOOK AT BEFORE WE

10   PROCEED?

11          *MR. PEARSON:* NOTHING FROM THE GOVERNMENT, YOUR

12   HONOR.

13          *THE COURT:* OKAY. ANYTHING FROM THE DEFENSE?

14          *MR. CALHOUN:* NO, YOUR HONOR.

15          *THE COURT:* OKAY. ALL RIGHT. MR. WRIGHT, SIR,

16   WOULD YOU PLEASE STAND? SIR, HAVE YOU HAD SUFFICIENT

17   OPPORTUNITY TO REVIEW THE REVISED PRESENTENCE INVESTIGATION

18   REPORT AND DISCUSS IT WITH YOUR LAWYER?

19          *THE DEFENDANT:* NO.

20          *THE COURT:* YOU HAVE NOT?

21          *THE DEFENDANT:* NO, SIR. I DON'T EVEN KNOW -- I

22   HAVEN'T EVEN SEEN THE OBJECTION HE EVEN TURNED IN FOR ME.

23          *THE COURT:* BUT WHAT ABOUT THE REPORT? HAVE YOU

24   SEEN THE REPORT?

25          *THE DEFENDANT:* I SAW THE FIRST -- I SAW THE FIRST

4

1    REPORT, FIRST REPORT WHICH I WENT OVER AND POINT OUT SOME

2    THINGS TO HIM.

3              THE COURT:  RIGHT.

4              THE DEFENDANT:  AND THEN HE WAS SUPPOSED TO MADE

5    OBJECTION TO IT, WHATEVER.

6              THE COURT:  RIGHT.

7              THE DEFENDANT:  I DID NOT SEE THOSE OBJECTIVE.  I

8    DIDN'T HEAR BACK FROM HIM.

9              THE COURT:  OKAY.

10             THE DEFENDANT:  ONLY TIME HE CAME BACK TO ME WAS

11   WHEN HE BROUGHT ME A RESPONSE, WHICH WAS LAST WEEK.

12             THE COURT:  UH-HUH.

13             THE DEFENDANT:  A RESPONSE FROM THE PROBATION

14   OFFICE.  SO I HAVE NOT SEEN THE INFORMATION WHEREAS WHEN HE

15   FIRST BROUGHT IT TO ME, HE WAS SUPPOSED TO BE AT THE NEXT

16   WEEK TO GO OVER IT AND I DIDN'T SEE HIM UNTIL LIKE, YOU KNOW,

17   IT WAS SO MANY DAYS, WAS CLOSE TO NUMBER OF DAYS THAT I HAD

18   TO RESPOND TO IT.  AND THEN AFTER THAT, I DIDN'T SEE HIM NO

19   MORE UNTIL LAST WEEK WHEN HE CAME AND ALL HE BROUGHT ME WAS A

20   RESPONSE TO -- SO I HAVEN'T SEEN ANY OBJECTION THAT HE PUT IN

21   IT.

22             THE COURT:  OKAY.  WELL, I DIDN'T ASK YOU ABOUT

23   WHETHER YOU'D SEEN REALLY THE OBJECTIONS.  I ASKED YOU IF YOU

24   HAD SEEN THE REVISED PRESENTENCE INVESTIGATION REPORT.  I

25   MEAN, YOU OBVIOUSLY HAVE BECAUSE YOU TALKED WITH YOUR LAWYER

1    ABOUT SOME OBJECTIONS THAT YOU WANTED TO LODGE; CORRECT?

2         *THE DEFENDANT:* NO. THAT WAS THE FIRST ONE.

3         *THE COURT:* WELL, THE ONLY CHANGE THAT WAS MADE TO

4    THE REPORT WAS TO CORRECT SOMETHING THAT YOU POINTED OUT.

5    WOULD YOU LIKE SOME MORE TIME TO LOOK OVER THE REPORT WITH

6    YOUR LAWYER?

7         *THE DEFENDANT:* YEAH, BECAUSE I -- I DON'T KNOW

8    WHAT -- WHAT -- WHAT HE OBJECTED TO BECAUSE I HAD SEVERAL

9    THINGS I REJECT -- OBJECTED TO THAT. AND HE DIDN'T BRING IT

10   BACK TO SHOW ME THAT HE DID AS I SAY.

11        *THE COURT:* WELL, HE -- HE DOESN'T HAVE TO DO AS

12   YOU SAY. HE HAS TO LODGE OBJECTIONS THAT ARE APPROPRIATE.

13      MR. CALHOUN, WOULD YOU LIKE TO HAVE A -- MAYBE WE CAN GO

14   ON WITH THE OTHER SENTENCING THAT I HAVE SCHEDULED AND

15   CONTINUE THIS FOR YOU TO HAVE A BRIEF MEETING WITH MR. WRIGHT

16   UNLESS YOU WANT TO EXPLAIN TO ME THAT YOU HAVE BEEN OVER WITH

17   HIM...

18        *MR. CALHOUN:* HE HAD THE REPORT FOR WEEKS TO REVIEW

19   IT. I PROVIDED HIM THE REPORT. HE HAD IT FOR WEEKS TO

20   REVIEW IT AND WHAT --

21        *THE COURT:* OKAY.

22        *MR. CALHOUN:* -- BEFORE I RETURNED. I THINK THE

23   DAY BEFORE THE OBJECTIONS WERE DUE WE MET, I WROTE DOWN THE

24   OBJECTIONS THAT HE WANTED ME TO MAKE, HE CONFIRMED THOSE WERE

25   THE OBJECTIONS HE WANTED ME TO MAKE, I MADE THE OBJECTIONS,

1    AND I PROVIDED HIM WITH A COPY OF THE GOVERNMENT'S RESPONSE

2    TO THE OBJECTIONS WHICH ALSO LISTS THE OBJECTIONS IN WRITING

3    --

4              THE COURT:  RIGHT.  RIGHT.

5              MR. CALHOUN:  -- WHICH WE HAD ALREADY MADE.  I

6    DON'T SEE ANYTHING -- ANY CHANGES IN THE REPORT THAT HE NEEDS

7    TO MAKE, THAT HE NEEDS TO READ.  IT'S THE SAME REPORT.

8              THE COURT:  OKAY.  OKAY.  ALL RIGHT.  WELL

9    MR. WRIGHT, SO YOU HAVE HAD OPPORTUNITY TO REVIEW THE

10   PRESENTENCE INVESTIGATION REPORT -- I MEAN THE REVISED

11   PRESENTENCE INVESTIGATION REPORT.  YOU HAVE HAD AN

12   OPPORTUNITY TO POINT OUT YOUR OBJECTIONS TO YOUR LAWYER AND

13   HE HAS RESPONDED BY FILING THOSE OBJECTIONS.

14      DO YOU WANT ANY MORE TIME BEFORE WE CONTINUE WITH YOUR

15   SENTENCING TO TALK WITH HIM ABOUT IT?

16             THE DEFENDANT:  YES, BECAUSE, YOUR HONOR, I -- I

17   STILL DON'T KNOW WHAT HE SAID BECAUSE I TOLD HIM ALSO WHEN HE

18   CAME TO SEE ME AFTER HAVING IT FOR ABOUT A WEEK OR TWO, I

19   TOLD HIM THAT I OBJECTED TO THE WHOLE ENTIRE PRESENTENCE

20   REPORT ANY WAY.

21             THE COURT:  OKAY.  OKAY.  ALL RIGHT.  SO YOU HAVE

22   THEN OBVIOUSLY BEEN OVER IT.  HAS MR. CALHOUN ANSWERED ALL

23   YOUR QUESTIONS ABOUT THE REPORT, I MEAN, IF YOU HAD ANY?

24             THE DEFENDANT:  FAR AS I KNOW, LIKE I SAY, I -- I

25   DON'T KNOW WHAT HE PUT IN AS FAR AS --

7

1              THE COURT:  OKAY.

2              THE DEFENDANT:  -- HOW HE WORDED ANYTHING.  I --

3              THE COURT:  OKAY.

4              THE DEFENDANT:  -- NOT SURE OF THAT.  ALL I KNOW IS

5    THE PRESENTENCE REPORT I DID HAVE A WEEK OR SO, GO OVER THAT.

6              THE COURT:  OKAY.

7              THE DEFENDANT:  AND BUT AS FAR AS WHAT HE PUT IN,

8    AS FAR AS THE OBJECTION, I HAVE NO CLUE WHAT'S -- WHAT HE'S

9    STATED.

10             THE COURT:  ALL RIGHT.  THANK YOU.  MR. CALHOUN,

11   YOU HAVE BEEN OVER THE CONTENTS OF THIS WITH HIM?

12             MR. CALHOUN:  I HAVE.

13             THE COURT:  OKAY.  AND YOU HAVE SHARED WITH HIM THE

14   OBJECTIONS THAT WERE MADE?

15             MR. CALHOUN:  I HAVE.

16             THE COURT:  AS WELL AS THE RESPONSE FROM THE

17   GOVERNMENT TO YOUR OBJECTIONS?

18             MR. CALHOUN:  YES, YOUR HONOR.

19             THE COURT:  OKAY.  ALL RIGHT.  VERY GOOD THEN.  ALL

20   RIGHT.  WELL, LET'S TAKE UP THOSE OBJECTIONS.  AND YOU CAN BE

21   SEATED, MR. WRIGHT.

22        THE FIRST OBJECTION -- NOW, THE FIRST OBJECTION WAS WHAT

23   WAS IN -- WAS ACTUALLY AN ERROR IN A NAME; IS THAT RIGHT?

24   THAT HE DENIES HE EVER -- NO, EXCUSE ME.  I'M GETTING THIS

25   MIXED UP WITH SOMETHING.  OKAY.  LET ME HEAR YOUR FIRST

1    OBJECTION.

2        MR. CALHOUN, WOULD YOU LIKE -- I'D LIKE TO HEAR FROM YOU

3    ABOUT YOUR OBJECTIONS.

4            *MR. CALHOUN:* PARAGRAPH NUMBER SEVEN, YOUR HONOR.

5            *THE COURT:* YES.

6            *MR. CALHOUN:* OKAY. MR. WRIGHT SIMPLY STATED THAT

7    HE THOUGHT THEY HAD THE WRONG NAME OF THE PROBATION AGENT WHO

8    HE MET WITH ON A PARTICULAR DATE.

9            *THE COURT:* OKAY. NOW, WAS THAT -- THAT WAS TAKEN

10   CARE OF IN THE REVISED REPORT; CORRECT? SO THAT'S NOT REALLY

11   AN ISSUE ANY LONGER. ALL RIGHT. THE SECOND OBJECTION, LET

12   ME HEAR FROM YOU ON THAT.

13           *MR. CALHOUN:* WELL, MR. WRIGHT OBJECTS TO THIS

14   INFORMATION WHICH WAS THE SAME INFORMATION PROVIDED IN HIS

15   BOND REVOCATION HEARING THAT HE HAD BEEN POSING AS AN

16   ATTORNEY AFTER HE HAD BEEN CONVICTED OF THIS OFFENSE.

17           *THE COURT:* OKAY. AND ANY OTHER BASIS FOR THAT

18   OBJECTION?

19           *MR. CALHOUN:* NO, YOUR HONOR.

20           *THE COURT:* ALL RIGHT. I'M GOING TO OVERRULE THAT

21   OBJECTION. ALL RIGHT. LET'S SEE. ARE THERE ANY OTHER

22   OBJECTIONS?

23           *MR. CALHOUN:* THERE IS ONE MORE. MR. WRIGHT

24   OBJECTED TO PARAGRAPH 14 IN THAT HE FELT THAT THOSE ISSUES

25   SHOULD HAVE BEEN DEALT WITH BY THE IRS AND HE SHOULDN'T HAVE

 1    BEEN PROSECUTED FOR THEM IN THIS JURISDICTION.

 2         *THE COURT:* OKAY. ALL RIGHT. WELL OBVIOUSLY --

 3    YEAH. WELL, OBVIOUSLY THIS COURT HAS JURISDICTION. TRIED

 4    HIM AND HE WAS FOUND GUILTY. I'M GOING TO DENY THE -- I MEAN

 5    OVERRULE THE OBJECTION. ANYTHING ELSE?

 6         *MR. CALHOUN:* NO, YOUR HONOR.

 7         *THE COURT:* OKAY. ALL RIGHT. HAVING DEALT WITH

 8    ALL THE OBJECTIONS, I WILL NOW ADOPT THE FINDINGS THAT ARE

 9    SET FORTH IN THE REVISED PRESENTENCE INVESTIGATION REPORT

10    INCLUDING THE APPLICABLE STATUTORY AND GUIDELINE PROVISIONS

11    SET FORTH IN IT FOR THE PURPOSES OF DETERMINING THE

12    REASONABLENESS OF MY SENTENCE.

13         ALL RIGHT. MR. WRIGHT, PLEASE STAND, SIR.

14         (DEFENDANT COMPLIED.)

15         *THE COURT:* ALL RIGHT. YOU WERE CONVICTED OF TWO

16    COUNTS. COUNT ONE WAS CONSPIRACY TO COMMIT WIRE FRAUD AND

17    MAIL FRAUD AND COUNT FOUR WAS FOR FILING A FALSE TAX RETURN.

18    THE STATUTORY PROVISIONS FOR THESE OFFENSES ARE AS FOLLOWS:

19    AS TO COUNT ONE, CUSTODY OF NOT MORE THAN 20 YEARS; COUNT

20    FOUR, CUSTODY OF NOT MORE THAN THREE YEARS.

21         SUPERVISED RELEASE FOR COUNT ONE IS NOT MORE THAN THREE

22    YEARS AND FOR COUNT FOUR NOT MORE THAN ONE YEAR. IT IS

23    ELIGIBLE FOR PROBATION UNDER THE STATUTES, COUNT ONE AND

24    COUNT FOUR, FOR ONE TO FIVE YEARS.

25         THERE IS A FINE TO COUNT ONE OF $250,000 AND A FINE FOR

1    COUNT FOUR OF $100,000.  AND THERE IS A SPECIAL ASSESSMENT

2    FEE FOR EACH COUNT FOR A TOTAL OF $200.

3        NOW, THE ADVISORY SENTENCING GUIDELINES ASSIGN THE

4    FOLLOWING TO YOUR OFFENSE.  COUNT ONE HAS A BASE OFFENSE

5    LEVEL OF 29 AND COUNT FOUR HAS A BASE OFFENSE LEVEL OF EIGHT.

6    THERE ARE SPECIFIC OFFENSE CHARACTERISTICS THAT ARE ADDED TO

7    COUNT TWO, TWO LEVELS, BECAUSE OF FAILURE TO REPORT INCOME.

8    THERE IS ALSO AN ADJUSTMENT FOR YOUR ROLE IN THE OFFENSE

9    WHICH ADDS TWO LEVELS.  SO YOUR ADJUSTED OFFENSE LEVEL FOR

10   COUNT ONE IS 31 AND COUNT TWO IS 12.  BUT WE USE THE HIGHEST

11   FOR YOUR COMBINED ADJUSTED OFFENSE LEVEL, WHICH IS 31.

12       AND YOUR CRIMINAL HISTORY CATEGORY IS ONE.  IN THAT

13   SITUATION THE GUIDELINES YIELD AN IMPRISONMENT RANGE OF 108

14   TO 135 MONTHS FOLLOWED BY SUPERVISED RELEASE OF NOT MORE THAN

15   THREE YEARS FOR COUNT ONE AND NOT MORE THAN ONE YEAR FOR

16   COUNT FOUR.  IT IS NOT ELIGIBLE FOR PROBATION UNDER THE

17   GUIDELINES.

18       THERE IS, HOWEVER, RESTITUTION DUE ON COUNT ONE IN THE

19   AMOUNT OF $146,090 AND FOR COUNT FOUR $5,330 AND, AGAIN, A

20   SPECIAL ASSESSMENT FEE OF A HUNDRED DOLLARS PER COUNT FOR A

21   TOTAL OF $200.

22       ALL RIGHT.  COUNSELORS, THAT'S HOW I SEE THE APPLICABLE

23   STATUTORY AND GUIDELINE PROVISIONS.  ANY OBJECTIONS, COMMENTS

24   OR CORRECTIONS?

25           *MR. PEARSON:*  NO OBJECTIONS FROM THE GOVERNMENT,

1    YOUR HONOR.

2              MR. CALHOUN:  NO OBJECTIONS, YOUR HONOR.

3              THE COURT:  ALL RIGHT.  THEN LET ME HEAR FROM

4    YOU -- YOU MAY BE SEATED.  LET ME HEAR FROM YOU, MR. PEARSON,

5    ABOUT WHAT IS AN APPROPRIATE SENTENCE AND SHOULD IT BE A

6    GUIDELINE SENTENCE CONSIDERING ALL THE 3553(A) FACTORS.

7         (DEFENDANT COMPLIED.)

8              MR. PEARSON:  YES, YOUR HONOR.  THANK YOU.  THE

9    GOVERNMENT WILL BE REQUESTING A GUIDELINE SENTENCE IN THIS

10   CASE, YOUR HONOR.  HOWEVER, WE DO BELIEVE THAT A

11   MID-GUIDELINE SENTENCE OF 120 MONTHS WILL BE APPROPRIATE FOR

12   MR. WRIGHT WHEN TAKING INTO ACCOUNT THE 3553(A) FACTORS,

13   SPECIFICALLY THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND

14   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

15        YOUR HONOR, IT WAS CLEAR FROM THE TRIAL, IT HAS BEEN

16   CLEAR FROM MR. WRIGHT'S BEHAVIOR SINCE THE TRIAL UP TO AND

17   INCLUDING HIS CURRENT INCARCERATION THAT THE -- THAT HIS VERY

18   NATURE INDICATES THAT MR. WRIGHT SEEKS OUT THE MOST DESPERATE

19   INDIVIDUALS AND OFFERS THEM SOME HOPE OF GETTING OUT OF

20   FORECLOSURE OR CRUSHING DEBT.

21        HE DOES THAT BY TAKING AWAY THE ONLY FUNDS THAT THEY

22   HAVE LEFT.  HE DOES THIS AND THEN FILES NONSENSE PAPERWORK

23   THAT HE KNOWS IS NOT GOING TO BE EFFECTIVE AND TAKES AWAY

24   WHATEVER MEAGER FUNDS THESE INDIVIDUALS HAVE.

25        I DO BELIEVE YOUR HONOR REMEMBERS FROM THE TRIAL THAT

1   MR. WRIGHT SPECIFICALLY TARGETED PEOPLE OF FAITH, GOING TO

2   CHURCH AND TELLING THEM THAT THEIR ANSWERS WERE -- THAT THEIR

3   PRAYERS WERE ANSWERED BY HIM AND IF THEY WOULD ONLY GIVE HIM

4   $1500 REAL DOLLARS OR 3,000 REAL DOLLARS, THAT HE WOULD THEN

5   PURPORT THIS SYSTEM TO ELIMINATE ALL OF THEIR DEBT.

6      YOUR HONOR, I DON'T SAY THIS LIGHTLY, BUT MR. WRIGHT'S

7   BEHAVIOR IS DESPICABLE.  HIS NATURE AND CIRCUMSTANCES ARE

8   AWFUL AND HE HAS EARNED EVERY BIT OF 120-MONTH GUIDELINE

9   SENTENCE.

10      UNDER THE 3553(A) FACTORS THE COURT SHOULD ALSO LOOK TO

11   THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE.  THE

12   GOVERNMENT WOULD ARGUE THAT IT IS A VERY SERIOUS THING FOR AN

13   INDIVIDUAL TO TARGET THESE VERY VULNERABLE AND DESPERATE

14   PEOPLE AND THAT IT IS VERY SERIOUS TO EXACERBATE THEIR

15   PROBLEMS FOR ONE'S OWN ENRICHMENT.

16      AND TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT.

17   IT HAS BEEN CLEAR SINCE THE END OF THIS CASE THAT MR. WRIGHT

18   HAS NOT BEEN DETERRED FROM HIS CONDUCT.  HE CONTINUES TO FILE

19   NONSENSE FILINGS WITH THE COURT DESPITE CLEAR ORDERS FROM

20   YOUR HONOR TO REFRAIN FROM DOING SO.

21      A CURSORY REVIEW OF HIS TIME LOCKED UP AT THE DETENTION

22   CENTER SHOWS THAT MR. WRIGHT IS CONTINUING TO PURPORT THESE

23   SAME FRAUDULENT SCHEMES AND NOW TRYING TO PURPORT HIS SYSTEM

24   AND TRANSFER IT TO OTHER INMATES.  HE'S HEARD ON NUMEROUS

25   JAIL CALLS TALKING ABOUT IT.  HE CERTAINLY HAS NOT LEARNED

1   ANY LESSON FROM THE TRIAL AND CLEARLY HAS NOT AT THIS POINT

2   BEEN DETERRED.

3        AND FINALLY, TO PROTECT THE -- TO PROTECT THE PUBLIC

4   FROM FURTHER CRIMES OF THE DEFENDANT.  YOUR HONOR, UNDER THIS

5   3553(A) FACTOR, I'M NOT EVEN CERTAIN IF LOCKING MR. WRIGHT UP

6   IS GOING TO PREVENT HIS INFLUENCE AND HIS PREYING ON THESE

7   SORTS OF DESPERATE PEOPLE.  HOWEVER, BASED ON THE SYSTEM WE

8   HAVE, THIS IS REALLY THE ONLY OPTION THAT WE HAVE FOR SOMEONE

9   LIKE MR. WRIGHT.

10       MR. WRIGHT HAS CONSISTENTLY THUMBED HIS NOSE AT THIS

11  COURT, HE HAS THUMBED HIS NOSE AT THE LAW, HE HAS THUMBED HIS

12  NOSE AT THE DOZENS OF VICTIMS THAT HE HAS MADE THEIR

13  SITUATIONS WORSE BY THROWING THEM OUT ON THE STREET.  AND

14  BASED ON ALL OF THESE FACTORS IT IS THE POSITION OF THE

15  GOVERNMENT THAT A 120-MONTH SENTENCE WOULD BE SUFFICIENT BUT

16  NOT GREATER THAN NECESSARY IN ORDER TO PROVIDE JUSTICE IN

17  THIS CASE.

18       *THE COURT:*  ALL RIGHT.  THANK YOU, MR. PEARSON.

19  ALL RIGHT.  MR. CALHOUN, LET ME HEAR FROM YOU ABOUT WHAT'S AN

20  APPROPRIATE SENTENCE.

21       *MR. CALHOUN:*  THANK YOU, YOUR HONOR.  IT'S

22  CERTAINLY TRUE THAT MR. WRIGHT HAS DONE ABSOLUTELY NOTHING TO

23  HELP HIMSELF SINCE HE'S BEEN ARRESTED ON THESE CHARGES.  IF

24  ANYTHING, HE'S JUST MADE THE PROBLEM WORSE.  BUT THERE ARE

25  TWO THINGS THAT I BELIEVE ARE NOTEWORTHY.  HE'S A 53-YEAR-OLD

1   MAN AND HE HAS NO -- PRACTICALLY NO CRIMINAL HISTORY TO SPEAK

2   OF AND HE HAS A GOOD EMPLOYMENT RECORD EXCEPT FOR THE FIVE

3   YEARS THAT HE RAN MONEY SOLUTIONS, AND THAT SAYS SOMETHING

4   ABOUT HIM.

5       THE SEMINARS THAT HE ATTENDED, YOU KNOW, THAT'S WHERE

6   THE TRAIN LEFT THE TRACKS.  HE BOUGHT INTO THIS STUFF.  AND I

7   BELIEVE HE REALLY STILL BELIEVES IT TO THIS DAY, BUT HE

8   BELIEVES THAT WHAT HE WAS DOING WAS LEGAL.  MAYBE -- DON'T

9   KNOW IF HE THOUGHT IT WAS RIGHT OR WRONG, BUT I REALLY

10  BELIEVES HE THINKS IT WAS LEGAL.

11      SO WE HAVE A 53-YEAR-OLD MAN WITH PRACTICALLY A CLEAN

12  RECORD WHO HAS BEEN WORKING HIS ENTIRE LIFE AND HE JUST TOOK

13  A BIG DETOUR FIVE YEARS AGO.  SO, A NINE-YEAR JAIL SENTENCE

14  FOR THAT GUY; IS THAT SUFFICIENT?  I THINK IT IS.  I MEAN, I

15  MEAN, IT'S GOING TO STRAIGHTEN HIM OUT BECAUSE HE CERTAINLY

16  HAS NEVER EXPOSED HIMSELF TO THE CRIMINAL JUSTICE SYSTEM LIKE

17  THIS BEFORE.

18      I MEAN, WHAT'S 120 MONTHS GOING TO DO?  I MEAN, IS THAT

19  REALLY WHAT -- WHAT HE NEEDS TO REALIZE THE ERROR OF HIS

20  WAYS?  I THINK NINE YEARS IS A SUBSTANTIAL SENTENCE.  EVEN

21  THOUGH HE'S DONE NOTHING WHATSOEVER TO ENDEAR HIMSELF TO

22  ANYBODY IN THIS COURTROOM, I THINK THAT NINE YEARS IS

23  SUFFICIENT CONSIDERING HIS HISTORY -- AND HE'S NOT A

24  23-YEAR-OLD OR A 33-YEAR-OLD; HE'S 53.  I JUST SUBMIT TO YOU

25  THAT THAT'S A SUBSTANTIAL PUNISHMENT FOR WHAT HE'S DONE.

1    HE DOESN'T HAVE THE ABILITY TO PAY RESTITUTION, SO HE'S

2    GOING TO HAVE TO -- I MEAN, WOULDN'T EVEN ASK YOU FOR

3    PROBATION, ESPECIALLY WHEN RESTITUTION IS SO SUBSTANTIAL.

4    BUT I ASK YOU TO GIVE HIM THE BOTTOM END OF THE GUIDELINE

5    RANGE.

6         THE COURT:  ALL RIGHT.  THANK YOU.  ALL RIGHT.

7    MR. WRIGHT?  PLEASE STAND.

8       (DEFENDANT COMPLIED.)

9         THE COURT:  SIR, YOU HAVE THE RIGHT TO ADDRESS THE

10   COURT ABOUT YOUR SENTENCING, SO I'M HAPPY TO LISTEN TO

11   ANYTHING YOU WANT TO TELL ME.

12        THE DEFENDANT:  MY HONOR, I DO HAVE STANDING TO

13   SPEAK; RIGHT?

14        THE COURT:  I CAN'T HEAR YOU.

15        THE DEFENDANT:  I DO HAVE STANDING TO SPEAK; RIGHT?

16        THE COURT:  YES.

17        THE DEFENDANT:  THANK YOU.  YOUR HONOR, AS HE SAID,

18   I'VE BEEN A ENTREPRENEUR BASICALLY ALL MY LIFE.  I WORKED FOR

19   DIFFERENT ELECTRIC COMPANIES AND THEN STARTED A BUSINESS ON A

20   20-INCH BICYCLE.  AND WHEN I GOT RID OF THE COMPANY AFTER SO

21   MANY YEARS, HAD NINE TRUCKS, 16 GUYS WORKING FOR ME.  THEN I

22   WENT INTO MINISTRY A LITTLE BIT, STILL DOING ELECTRICAL WORK

23   ON THE SIDE, BUT A MUCH SMALLER SCALE.

24      THEN I BEGAN TO RUN INTO DIFFERENT SITUATIONS WHERE I

25   MYSELF WENT THROUGH A TRAGIC SITUATION WITH LOSING A HOUSE

1    THAT I BUILT FROM THE GROUND UP, AND THAT DID SOMETHING TO

2    ME.  AND THEN AS TIME WENT ON, I BEGIN TO DO NETWORKING AND

3    EVERYBODY'S CALLING ME FOR HELP WITH MORTGAGE AND STUFF, AND

4    LIKE I -- I -- YOU KNOW, I DON'T DO THAT, I JUST DO

5    NETWORKING.

6         SO EVENTUALLY I STARTED RESEARCHING AND GOT INVITED TO

7    SOME SEMINARS AND STUFF LIKE THAT.  AND I FELT THE PAIN I

8    WENT THROUGH WITH MY FAMILY WHEN WE LOST OUR HOUSE, SO I WAS

9    NEVER INTENDED ON HURTING ANYBODY BECAUSE WHEN I STARTED

10   DOING THIS, IT WAS JUST OUT OF KINDNESS, YOU KNOW.  IF YOU

11   CHARGING SOMEBODY $600 BUT YOU FIGHT WITH THEIR CASE FOR TWO

12   TO THREE YEARS OFF THAT ONE $600, I DON'T SEE HOW THAT COULD

13   BE SCAMMING SOMEBODY.

14        AND THEN AFTER GETTING THE WORKLOAD TO A POINT WHERE IF

15   I'M WORKING SOMEBODY HOUSE SITUATION HELPING THEM FOR TWO TO

16   THREE YEARS, $600 IS NOT GOING TO COVER MY SALARY.  I GOT TO

17   PAY THE PEOPLE THAT'S WORKING FOR ME.  SO THAT'S WHEN I BEGIN

18   TO GO UP ON THE PRICE.

19        IT WASN'T THAT I WAS TAKING MONEY FROM PEOPLE THAT THEY

20   COULDN'T PAY THEY BILL.  THEY WERE ALREADY MONTHS, YEARS

21   BEHIND IN THEY MORTGAGE AND THEY SAW WAS BENEFICIAL FOR ME TO

22   HELP BECAUSE -- THE TRIAL IS OVER NOW BUT I HAD PEOPLE THAT

23   WAS LINED UP TO TESTIFY BUT THEY REFUSE TO SUBPOENA THEM THAT

24   WOULD HAVE SHINE A DIFFERENT LIGHT ON THE WHOLE SITUATION.

25        SO, IT WASN'T A SITUATION WHERE I WAS JUST PREYING ON

1    PEOPLE AND NOT THE WAY THAT THE GOVERNMENT HAS INDICATING

2    THAT I WENT TO CHURCH PEOPLE.  NO.  IT JUST HAPPENED TO BE

3    SOME PEOPLE WERE CHURCH PEOPLE, BUT NO, THESE WERE

4    HIGHLY-EDUCATED PEOPLE, PEOPLE WHO CAN GO AND DO THEIR OWN

5    RESEARCH IN WHICH I TOLD SEVERAL CLIENTS, I SAY, DON'T

6    BELIEVE ME, GO DO YOUR RESEARCH FOR YOURSELF, MAKE A

7    DECISION, AND THAT'S HOW I OPERATED.  BUT I DIDN'T GET -- IT

8    DID NOT GET TO DISPLAY INSIDE THE TRIAL INTENTIONALLY

9    BASICALLY.

10    SO, THAT IS WHY EVERYTHING IS LIKE IT IS.  BUT AT THE

11    SAME TIME ONCE I GOT IN CONTACT WITH THESE SEMINARS AND THEY

12    BEGIN TO SHOW ME DIFFERENT THINGS, SHOW ME CASE LAWS FROM THE

13    SUPREME COURT, SHOW ME CODES, I HAD NO, NO REASON TO BELIEVE

14    THAT I WAS DOING ANYTHING WRONG.  EVEN NOW TO THE POINT WHERE

15    I HAVE ACTUALLY HAD JUDGE TO COME AND TELL ME TO DO A BRIEF

16    FOR THIS PERSON BUT YOU DON'T SIGN IT, JUST LET THEM SIGN IT.

17    SO WHAT IS KIND OF MESSAGE THAT SENDING TO ME?  I'M

18    HELPING PEOPLE.  THE JUDGE KNOWS IT.  THE JUDGE TELL ME TO

19    WRITE THE BRIEF BUT DON'T SIGN IT, HAVE THEM TO SIGN IT.  YOU

20    KNOW, IT'S UNFAIR.

21    AND EVEN NOW TO THE POINT WHERE, YOU KNOW, I HAVE TO

22    FILE A -- A -- A -- A SUIT FOR INSUFFICIENT COUNSEL BECAUSE

23    YOU SEE IT IN MY RECORD WHERE I HAD 18 GRIEVANCE AGAINST THE

24    ATTORNEY THAT WAS SUPPOSED TO BE REPRESENTING ME IN TRIAL.

25    WHO LET THE BALL DROP?  I NEVER WENT THROUGH ANY -- ANY --

1    ANY OF THE DISCOVERY, NEVER WENT THROUGH WHO GOING TO BE

2    TESTIFYING, NEVER WENT THROUGH WHAT'S GOING TO BE PRESENTED

3    INSIDE THE -- TO TRIAL, ANY EXHIBITS.  BUT THAT WAS SUPPOSED

4    TO BE MY COUNSEL.

5         THE COURT:  OKAY.  ANYTHING ELSE YOU WANT ME TO

6    CONSIDER?

7         THE DEFENDANT:  AND SO, THE FACT THAT I UNDERSTOOD

8    THE CASE LAWS THAT WAS GIVEN TO ME, I VERIFIED THEM, I WENT

9    GOT COPIES FROM THE LIBRARY CONGRESS IN DC, BUT NONE OF THAT

10   STOOD FOR ANYTHING.  AND THE FACT THAT I WAS BASED IT UPON

11   INTERNATIONAL LAW THAT SAID YOU CAN DO THIS, YOU COULD DO

12   THAT--

13        THE COURT:  ALL RIGHT.  ANYTHING OTHER THAN THE

14   INTERNATIONAL LAW?

15        THE DEFENDANT:  UNDER INTERNATIONAL LAW THE CODES

16   THAT WERE USED LIKE WHEN THE AGENTS GOT ON THE STAND, SAID

17   THEY DON'T KNOW WHAT UCC1 THAT THROUGH THEIR AGENT -- THEY

18   DON'T KNOW WHAT THE UCC3-415--

19        THE COURT:  RIGHT.  OKAY.  THE INTERNATIONAL LAW

20   AND THE UNIFORM COMMERCIAL CODE.  ANYTHING ELSE?  ANYTHING

21   ELSE YOU WANT ME TO CONSIDER?

22        THE DEFENDANT:  I WAS -- EVERYTHING WAS BASED UPON

23   WHAT I KNOW TO BE TRUE AND AT THE SAME TIME IN THE MIDST OF

24   THAT, I CLAIMED MY NATIONALITY AND I WENT BACK TO LAND OFF

25   SEA BECAUSE RIGHT NOW I'M IN THE WELL.

1           *THE COURT:* OKAY. ALL RIGHT. THANK YOU. ALL

2    RIGHT. I BELIEVE THAT WE CORRECTLY CALCULATED THE GUIDELINES

3    AND I HAVE HEARD FROM BOTH SIDES ABOUT WHAT IS AN APPROPRIATE

4    SENTENCE IN THIS CASE. I'M VERY FAMILIAR WITH THE MATTER. I

5    TRIED THE CASE. I LISTENED TO THE TESTIMONY OF SOME OF THE

6    VICTIMS.

7           AND I THINK MR. PEARSON IS RIGHT ABOUT WHAT HE'S POINTED

8    OUT; THAT NOT ONLY HAS THIS BEEN JUST A TERRIBLE TAKING

9    ADVANTAGE OF PEOPLE WHO WERE AT THEIR MOST VULNERABLE POINT,

10   BUT THE WHOLE ATTITUDE ABOUT NOT RESPECTING THE LAW, NOT

11   RESPECTING THIS COURT, NOT RESPECTING THE FACT THAT WE LIVE

12   IN A CIVILIZED SOCIETY AND WE ARE GOVERNED BY THE RULE OF LAW

13   AND THE WILLINGNESS OF MR. WRIGHT TO JUST SOMEHOW CONVINCE

14   HIMSELF THAT ALL THAT DOESN'T APPLY TO HIM IS ASTOUNDING AND

15   UNFORTUNATELY IN THIS CASE IT REALLY DID HURT, HURT A LOT OF

16   PEOPLE.

17          SO I THINK A GUIDELINE SENTENCE IS APPROPRIATE. I ALSO

18   AGREE WITH MR. PEARSON THAT I'M NOT REALLY SURE IF THERE IS A

19   SENTENCE THAT'S SUFFICIENT TO DETER HIM FROM ENGAGING IN THIS

20   CONDUCT. APPARENTLY HE'S STILL DOING IT WHILE HE'S

21   INCARCERATED.

22          BUT AS HE ALSO POINTED OUT, WE DON'T HAVE A LOT OF OTHER

23   OPTIONS FOR MR. WRIGHT. AND CERTAINLY IT WILL BE MORE

24   DIFFICULT FOR HIM TO CONTINUE HIS FRAUDS BEHIND BARS THAN IT

25   WOULD BE IF HE WERE OUT AMONGST CIVILIZED PEOPLE AGAIN.

1    SO I HAVE CONSIDERED REALLY ALL OF THE 3553(A) FACTORS,

2    BUT THE DETERRENCE, PUNISHMENT, PROMOTING RESPECT FOR THE

3    LAW, THOSE ARE THE THINGS THAT I THINK MAKES A GUIDELINE

4    SENTENCE REALLY APPROPRIATE IN HIS SITUATION.  I HAVE ALSO

5    CONSIDERED SOME OTHER DEFENDANTS.

6    I HAVE THOUGHT ABOUT WHAT I DID WITH MS. JACKSON, WHO

7    WAS A CO-DEFENDANT IN THE CASE.  I HAVE LOOKED AT THE

8    TREATMENT, SENTENCES THAT I HAVE HANDED OUT FOR OTHER PEOPLE

9    WHO ENGAGED IN SIMILAR CONDUCT, AND I THINK TAKING ALL OF

10   THAT INTO CONSIDERATION THAT A GUIDELINE SENTENCE IS

11   APPROPRIATE.

12   SO HAVING CALCULATED AND CONSIDERED THE ADVISORY

13   SENTENCING GUIDELINES AND HAVING ALSO CONSIDERED THE RELEVANT

14   STATUTORY SENTENCING FACTORS CONTAINED IN 18 USC 3553(A) IT

15   IS THE JUDGMENT OF THE COURT THAT THE DEFENDANT, RONALD ALLEN

16   WRIGHT, IS HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF

17   PRISONS TO BE IMPRISONED FOR A TERM OF 120 MONTHS.

18   THIS SENTENCE CONSISTS OF 120 MONTHS AS TO COUNT ONE AND

19   36 MONTHS AS TO COUNT FOUR; THOSE TERMS TO RUN CONCURRENTLY.

20   AS TO COUNT ONE, THE DEFENDANT SHALL PAY MANDATORY

21   RESTITUTION IN THE AMOUNT OF $146,90 TO THE VICTIMS IN THIS

22   CASE THROUGH THE CLERK, US DISTRICT COURT, 901 RICHLAND

23   STREET, COLUMBIA, SOUTH CAROLINA, 29201.  PAYMENTS ARE DUE

24   AND PAYABLE IMMEDIATELY, BUT RESTITUTION -- INTEREST ON THE

25   RESTITUTION IS WAIVED.

1     IT APPEARS THAT MR. WRIGHT DOES NOT HAVE THE ABILITY TO

2  PAY A FINE AND THEREFORE THE FINE IS WAIVED, BUT HE SHALL PAY

3  THE MANDATORY SPECIAL ASSESSMENT FEE OF $200 WHICH CONSISTS

4  OF $100 TO EACH OF THE COUNTS WHICH IS ALSO DUE AND PAYABLE

5  IMMEDIATELY.

6     UPON RELEASE FROM IMPRISONMENT THE DEFENDANT SHALL BE

7  PLACED ON SUPERVISED RELEASE FOR A TERM OF THREE YEARS.  THIS

8  TERM CONSISTS OF THREE YEARS AS TO COUNT ONE AND ONE YEAR AS

9  TO COUNT FOUR; THOSE TERMS TO RUN CONCURRENTLY.

10     WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE

11  BUREAU OF PRISONS THE DEFENDANT SHALL REPORT IN PERSON TO THE

12  PROBATION OFFICE IN THE DISTRICT TO WHICH HE IS RELEASED.

13  AND WHILE ON SUPERVISED RELEASE, HE SHALL COMPLY WITH THE

14  MANDATORY AND STANDARD CONDITIONS OF SUPERVISION OUTLINED IN

15  18 USC 3583(D) AND HE SHALL ALSO COMPLY WITH THE FOLLOWING

16  SPECIAL CONDITIONS FOR THE REASONS THAT ARE SET FORTH IN THE

17  PRESENTENCE REPORT THAT HAS PREVIOUSLY BEEN ADOPTED AS THE

18  FINDINGS OF FACTS FOR PURPOSES OF THIS SENTENCING.

19     AS TO COUNT ONE, THE DEFENDANT SHALL PAY ANY REMAINING

20  MANDATORY RESTITUTION TO THE VICTIMS IN THIS CASE AT A

21  MONTHLY RATE OF $300 TO COMMENCE 30 DAYS AFTER HIS RELEASE

22  FROM INCARCERATION.

23     AS TO COUNT FOUR, THE DEFENDANT SHALL PAY $5,330 IN

24  RESTITUTION TO THE INTERNAL REVENUE SERVICE IN MINIMUM

25  MONTHLY INSTALLMENTS OF $150 TO COMMENCE 30 DAYS AFTER HIS

1    RELEASE FROM INCARCERATION AND THE DEFENDANT MUST PROVIDE THE

2    PROBATION OFFICER WITH ACCESS TO ANY REQUESTED FINANCIAL

3    INFORMATION AND AUTHORIZE THE RELEASE OF THAT INFORMATION AND

4    THE PROBATION OFFICE MAY SHARE THAT FINANCIAL INFORMATION

5    WITH THE US ATTORNEY'S OFFICE.

6         AND FINALLY, THE DEFENDANT MUST NOT INCUR NEW CREDIT

7    CHARGES OR OPEN ADDITIONAL LINES OF CREDIT WITHOUT THE

8    APPROVAL OF THE PROBATION OFFICER.

9         SO AS TO COUNTS ONE AND FOUR OF THE INDICTMENT, I FIND

10   THIS SENTENCE IS REASONABLE UNDER THE FACTS AND CIRCUMSTANCES

11   OF THIS CASE AND THAT IT IS SUFFICIENT BUT NOT GREATER THAN

12   NECESSARY TO ACHIEVE THE PURPOSES OF SENTENCING.

13        ANY ERRORS OR OMISSIONS ANYONE WANTS TO BRING TO MY

14   ATTENTION?

15             MR. PEARSON:  NONE FROM THE GOVERNMENT, YOUR HONOR.

16             THE COURT:  OKAY.  AND YOU ONLY PROCEEDED ON COUNTS

17   ONE AND FOUR AT TRIAL; RIGHT?  YEAH.

18             MR. PEARSON:  THAT'S RIGHT.  YES, YOUR HONOR.

19             THE COURT:  ALL RIGHT.  MR. WRIGHT, YOU HAVE 14

20   DAYS FROM THE DATE OF THE JUDGMENT ORDER TO FILE ANY NOTICE

21   OF APPEAL.  THANK YOU.

22        (HEARING CONCLUDED.)
                              ***
23        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
24        S/KATHLEEN RICHARDSON
          _____        JUNE 12, 2019
25        KATHLEEN RICHARDSON, RMR, CRR